```
                    United States District Court
                      District of Massachusetts
_____
                              )
KEITH RUDY, JR., THERESE COOPER, )
JOHN DAVIS, FRANCIS AUBREY,   )
DENNIS DALEY, ANGELA MAILLE,  )
DENISE PELLETIER, SEAN        )   Civil Action No.
O'CONNELL, TIMOTHY LEKITES,   )   07-11567-NMG
STEPHEN PARIS, ERIN DALTON,   )
MILDRED BADILLO, et al.,      )
       Plaintiffs,            )
                              )
       v.                     )
                              )
CITY OF LOWELL,               )
       Defendant.             )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

The named plaintiffs brought suit on behalf of themselves and others similarly situated against the City of Lowell ("the City") for violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by under-calculating the "regular rate" of pay used to determine overtime wages. Before the Court are the defendant's motion for summary judgment as to damages and plaintiffs' motion to amend the complaint.

### I. Factual Background

This case involves a technical dispute with respect to the calculation of overtime pay under the FLSA. All of the plaintiffs are or, at the time of the complaint, were employed by the City and members of the American Federation of State, County

-1-

and Municipal Employees, AFL-CIO State Council 93, Local 1705.  A collective bargaining agreement ("CBA") sets forth the terms and conditions of the plaintiffs' employment.

The CBA provides that employees may receive a $3.00 per hour augmentation to their pay for plowing snow, a 5% differential for working undesirable night shifts and a $150 weekly "standby" payment to employees at its Water Distribution System.  The agreement also allows employees to earn overtime pay of one-and-one-half times their regular pay if they work in excess of eight hours in one day or forty hours in one week.  The crux of this dispute concerns whether the three named pay augmentations should be included in the employees' regular rate of pay for the purpose of calculating overtime wages and, if so, how the City is permitted to net out those augmentations against other "premiums" paid to employees beyond the requirements of the FLSA.

## II.  Procedural History

Plaintiffs filed their complaint on August 22, 2007 and filed an amended complaint two months later identifying 88 plaintiffs.  In November, 2009, the parties filed cross-motions for summary judgment with respect to liability.  The City then conceded that it had violated the FLSA by failing to include the snow plow stipend and shift differentials in the plaintiffs' regular rate calculations.

In a Memorandum and Order ("M&O") on June 7, 2010, the Court

found that the Water Department's $150 standby stipend also should be included in the regular rate of pay in the weeks during which employees volunteered for standby duty. Rudy v. City of Lowell, 716 F. Supp. 2d 130, 133 (D. Mass. 2010). As such, the Court allowed the plaintiffs' motion for summary judgment. With respect to damages, the Court stated that the parties would either resolve issues related to the calculation of back pay and damages by August 15, 2010 or, if further court intervention was necessary, the parties would submit memoranda in support of their positions by August 31, 2010.

On January 7, 2011, after two extensions of time, the City moved for summary judgment as to damages and the plaintiffs filed a memorandum addressing damages. Plaintiffs also moved to amend their complaint to add a claim for a violation of the Massachusetts Payment of Wages Law, Mass. Gen. Laws ch. 149, § 148. The parties have submitted timely oppositions to each others' motions.

### III. Motion for Summary Judgment

#### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to

show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**B. Application**

At this point, the parties do not dispute the facts or the

defendant's liability.  All that remains for the Court to decide are questions of law relating to damages.

**1.   Offset Calculation**

Section 207(h)(2) of the FLSA provides that

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h)(2).  Only the "premium" portion of the contractual overtime rate (the extra one-half on top of the regular rate) may be used to offset the defendant's statutory overtime liability.  O'Brien v. Town of Agawam, 350 F.3d 279, 289 (1st Cir. 2003) ("O'Brien I").

Here, the CBA allows employees to treat certain non-work days such as vacation, sick and personal days as hours actually worked for the purpose of determining overtime hours.  The City also pays some workers time and one-half for working on holidays.  The parties do not dispute that the extra compensation provided for in the plaintiffs' CBA falls within the compensation described in subsection (5), (6) and (7) and can be used to offset defendant's underpayment, pursuant to § 207(h)(2).

The parties do dispute, however, whether premium compensation earned in one week can be used to offset an underpayment in a different week.  Plaintiffs argue that their damages for unpaid overtime should be calculated on a workweek basis and that any offsets pursuant to § 207(h)(2) may only be

attributed to the singular workweeks in which the premiums and overtime were earned. In other words, an underpayment one week cannot be offset by a premium payment made in a different week. The defendant contends, to the contrary, that it is entitled to a "cumulative offset", consisting of all premium payments, against any FLSA overtime it owes, regardless of when the premium payments were earned or made.

The FLSA does not provide an explicit answer to this difference of interpretation and the United States Circuit Courts have taken divergent positions. Some courts have held that § 207(h) offsets should be calculated on a workweek basis. Herman v. Fabri-Centers of Am., Inc., 308 F.3d 580, 585-93 (6th Cir. 2002); Howard v. City of Springfield, 274 F.3d 1141, 1147-49 (7th Cir. 2001); Roland Elec. Co. v. Black, 163 F.2d 417, 420 (4th Cir. 1947); Conzo v. City of New York, 667 F. Supp. 2d 279, 291 (S.D.N.Y. 2009); Bell v. Iowa Turkey Growers Co-op., 407 F. Supp. 2d 1051, 1063 (S.D. Iowa 2006); Nolan v. City of Chicago, 125 F. 2d 324, 331 (N.D. Ill. 2000). Other courts have allowed defendants to apply a cumulative offset. Singer v. City of Waco, 324 F.3d 813, 826-28 (5th Cir. 2003); Kohlheim v. Glynn County, 915 F.2d 1473, 1481 (11th Cir. 1990).

The First Circuit has not directly addressed this issue but other sessions in this District have. In O'Brien v. Town of Agawam, United States District Judge Michael A. Ponsor addressed

facts analogous to those at bar and held that the employer could apply a cumulative offset.  491 F. Supp. 2d 170, 176 (D. Mass. 2007) ("O'Brien II").  The Court surmised that the First Circuit would hold accordingly given its holding in Lupien v. City of Marlborough.  Id. at 175.  In Lupien, the employer's practice of compensating employees for overtime by use of compensatory time ("comp time"), instead of in cash, violated the FLSA.  387 F.3d 83 (1st Cir. 2004).  With respect to damages, the First Circuit held that the employer did not have to pay its employees for overtime hours for which the employee had used comp time, regardless of when the employee used the comp time.  The Court reasoned that paying the employees for overtime hours for which they had used comp time would result in double payment for the same overtime hours.  In Murphy v. Town of Natick, another case analogous to this one, United States District Judge Richard G. Stearns agreed with the holding in O'Brien II and also allowed defendants to apply a cumulative offset.  516 F. Supp. 2d 153, 160-61 (D. Mass. 2007).

Although the two cases in this District are directly analogous to this case, the Court disagrees with them with respect to their interpretation of the FLSA and of Lupien.  A further analysis of the Lupien case, the purpose of the FLSA and its interpretation by the Department of Labor ("the DOL") and the First Circuit's language in O'Brien I all undermine the position

adopted by the courts in O'Brien II and Murphy. Rather, they lead to the conclusion that § 207(h)(2) offsets should be calculated on a workweek basis for the following reasons:

1. This case is distinguishable from Lupien and other First Circuit case law indicates support for a workweek offset model. Lupien dealt with an application of § 207(o) (regulating the use of compensatory time), not § 207(h). In fact, § 207(h) is not referred to in that opinion. Furthermore, here, the employees were not given the option of taking comp time rather than overtime payments. Thus, there is no risk in our case, as there was in Lupien, that the plaintiffs will be compensated twice for the same hours. Thus, the Court concludes that the First Circuit's decision in Lupien does not indicate how it would decide the question at bar.

More on point is the First Circuit's discussion of § 207(h)(2) in O'Brien I, in which it stated that

> The regulations specifically explain how to treat such mid-workweek contractual overtime payments under the Act: only the premium portion of the contractual overtime rate (that is, the amount in excess of the employee's regular rate) is deemed "overtime" pay and may be offset against any statutory overtime liability <u>in the same week</u>.

O'Brien I, 350 F.3d at 289 (citing 29 C.F.R. §§ 778.201(a), 202(a)) (emphasis added). Thus, although not resolving the offset issue in that decision, the First Circuit conveyed its inclination by specifying that offsets pursuant to § 207(h)(2) would apply "in the same week".

2. The FLSA overtime requirement uses a single workweek as its basic unit of measurement. <u>Scott</u> v. <u>City of New York</u>, 592 F. Supp. 2d 475, 484 (S.D.N.Y. 2008). Section 207(a)(1) sets forth the basic overtime rule:

> no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

The focus on the unitary workweek is prevalent throughout § 207 and the DOL's interpretation of that section. For example, 29 C.F.R. § 778.103 directs employers to calculate overtime liability on a weekly basis. Further, 29 C.F.R. § 778.104 provides that "[t]he Act takes a single workweek as its standard" and an employer cannot average the number of hours an employee worked in two weeks in order to avoid paying overtime:

> [I]f an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40.

It is clear from § 778.104 that cumulative offsets were not contemplated by the DOL. In addition, where the single workweek model is problematic, i.e. when applied to firefighters and law enforcement officers, the FLSA includes a very specific and limited exception. <u>See</u> 29 U.S.C. § 207(k).

With regard to the exact issue before the Court, 29 C.F.R.

-9-

§ 778.202(c) explains that credits pursuant to § 207(h) may be given for overtime due "in that workweek". See Howard, 274 F.3d at 1148-49; Conzo, 667 F. Supp. 2d at 290. Finally, and perhaps most importantly, the DOL has also issued an opinion letter stating that

> surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods.

Letter from Herbert J. Cohen, Deputy Administrator, U.S. Dep't of Labor, WH-526, 1985 WL 304329 (Dec. 23, 1985).

3. Overtime payments are intended to be paid as soon as is practicable. Although they are not entitled to deference by this Court, several of the DOL's official interpretations of § 207 demonstrate the FLSA's emphasis on ensuring that overtime payments are made soon after they are earned. Howard, 274 F.3d at 1148. For instance, 29 C.F.R. § 778.106 provides that overtime payments need not be paid weekly but must be paid as soon as is practicable:

> Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

See also Nolan, 125 F. Supp. 2d at 332 (discussing 29 C.F.R. § 778.106 and holding that offsets for overtime paid apply on a pay period basis).

The reason for requiring employers to calculate and make overtime payments as soon as practicable is obvious: employees are entitled to know how much they will be paid and to prompt payment of what they have earned. As poignantly stated by the Seventh Circuit in Howard v. City of Springfield, if § 207(h)(2) were to permit a cumulative offset, employers could withhold overtime earnings in order to offset them against potential "short" weeks in the future. 274 F.3d at 1148-49. Under such a model, an employee's overtime payments could be put on hold indefinitely until the employer is either willing or compelled to pay. That outcome is not only illogical but also contradicts the FLSA's focus on the workweek as a unit and its concern with prompt overtime payments.

In fact, this case uniquely illustrates why a workweek offset is appropriate: if the City had correctly calculated its overtime rate and applied the § 207(h)(2) offsets contemporaneously, it would not have been able to apply those offsets to obligations incurred one or two years later. See id. at 1148. The workweek method of calculating offsets most closely reproduces what the parties would be entitled to had there been no error in the City's initial computation of its overtime liability. See Nolan, 125 F. Supp. 2d at 333.

4. The purpose of the FLSA, to protect workers from "excessive work hours and substandard wages", is best served by

the workweek offset model. Howard, 274 F.3d at 1148; see Herman, 308 F.3d at 585–93. This was clearly articulated in Scott v. City of New York, in which the DOL advocated for the workweek offset model. 592 F. Supp. 2d at 484. The District Court in that case found that "both the structure of the Act and its legislative history lend credence to DoL's interpretation." Id. The Court explained how a cumulative offset undermines the protections afforded by the FLSA:

> The [overtime] requirement protects workers from the imposition of excessive hours by placing an immediate cost on the employer. If employers were allowed to bank credit for contractual overtime against future obligations to pay statutory overtime, it would place workers in the employer's debt[.]

Id. In essence, it would require employees to work large blocks of overtime without premium compensation.

5. Finally, the arguments for applying a cumulative offset are unpersuasive. The City claims that a workweek offset will result in a windfall to the employees but that seems implausible given the fact that, if the City had been correctly calculating its overtime rate and applying the § 207(h)(2) offset at every pay period, the offset would have been applied only to the overtime liability in that pay period. Moreover, the circuit court cases cited by the City do not provide support for a cumulative offset. In Singer v. City of Waco, 324 F.3d at 827, the Fifth Circuit held that § 207(h) was inapplicable, while in Kohlheim v. Glynn County, 915 F.2d at 1481, the Eleventh Circuit

did not even explain why it allowed a cumulative offset.

In summary, the Court finds that the plaintiffs' method of calculating damages is most compatible with both the language and purpose of the FLSA's overtime requirements and the First Circuit's understanding of those requirements. As such, the plaintiffs' damages for unpaid overtime should be calculated on a workweek basis and any offsets pursuant to § 207(h)(2) should be attributed only to the singular workweeks in which both premiums and overtime were earned. The Court concludes that only the premium portions of the extra payments, i.e. the extra one-half of the regular rate, may be used to offset the City's overtime liability. O'Brien II, 491 F. Supp. 2d at 176.

### 2. Liquidated Damages

Section 216(b) of the FLSA provides that a plaintiff whose employer violated the FLSA is entitled to liquidated, or double, damages. 29 U.S.C. § 216(b). Liquidated damages are intended to serve as compensation for the delay in payment of wages owed to the plaintiff. Lupien, 387 F.3d at 90. Good faith is an affirmative defense to paying such damages if the employer can demonstrate that its conduct or omission giving rise to the lawsuit

> was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act[.]

29 U.S.C. § 260. Good faith is lacking where the defendant has

failed to investigate potential liability or "inquire about the law's requirements."  Keeley v. Loomis Fargo & Co., 183 F.3d 257, 270 (3rd Cir. 1999).  Case law suggests that liquidated damages are to be awarded unless the employer shows that it relied on the advice of informed counsel or an opinion it solicited from the Department of Labor.  O'Brien II, 482 F. Supp. 2d at 120 (citing Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 72 (2d Cir. 1997); McLaughlin v. Hogar San Jose, Inc., 865 F.2d 12, 14 (1st Cir. 1989)).

The Court concludes that the City acted in good faith here. Apparently, the City made no inquiry into whether its payment practices were in compliance with the FLSA before the complaint was filed in this case and the City does not deny that it still has not adjusted its payroll practices in accordance with this Court's June, 2010 M&O.  Nevertheless, as this Court noted in that M&O, this case presents a statutory interpretation of first impression in the First Circuit.  Until June, 2010, there was no First Circuit case law addressing the question of whether standby pay must be included in the employee's regular rate for the purposes of calculating overtime.

In the absence of guidance from other courts in this circuit, this Court relied on its own statutory interpretation and a number of non-controlling DOL Wage and Hour Division FLSA Opinion Letters.  Thus, even if the City had solicited an opinion

from informed counsel or from the DOL, it is unclear what advice it would have received.

Moreover, there is a circuit split with respect to how § 207(h)(2) offsets are applied and the two district judges of this Court who have addressed the issue allowed the application of a cumulative offset. Thus, it was not unreasonable for the City to believe that the § 207(h)(2) offsets could be applied cumulatively to mitigate any miscalculation.

Finally, the complaint in this case constituted the first written assertion that the City's regular rate calculation violated the FLSA. In fact, the City had collectively bargained in good faith with the Union for a regular rate of pay that specifically included a Water Utility Compensation augmentation but not the 5% Night-Time Shift Differential, the $3 Snowplow Driver Stipend or the standby pay. When an employer's decision is "made above board and justified in public", such as during collective bargaining, the employer is more likely to be found to have acted in good faith because "[d]ouble damages are designed in part to compensate for concealed violations, which may escape scrutiny." Walton v. United Consumers Club, Inc., 786 F.2d 303, 312 (7th Cir. 1986). Here, the lack of any evidence that the City knowingly concealed its violation of the FLSA weighs against awarding liquidated damages. The Court finds, therefore, that the City acted in good faith and "had reasonable grounds for

believing that [its] act or omission was not a violation of the [FLSA]". 29 U.S.C. § 260. As such, the Court concludes that liquidated damages are unwarranted in this case.

### 3. Willfulness and the Statute of Limitations

Plaintiffs claim that back pay for a minimum of three years before each plaintiff opted into this action is required by § 255(a) of the FLSA because the City's violation was "willful". 29 U.S.C. § 255(a). Section 255(a) provides for a two-year statute of limitations for FLSA actions unless the cause of action arises out of a willful violation, in which case the statute of limitations is three years. A violation is willful where the employer either "knew or showed reckless disregard for" whether its payment practices were in violation of the FLSA. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). The employee seeking to benefit from the extended statute of limitations bears the burden of showing that the defendant's conduct was willful. Desmond v. PNGI Charles Town Gaming, L.L.C., Nos. 09-2189, 09-2190, 09-2192, 09-2254, 2011 WL 117575, at *6 (4th Cir. Jan. 14, 2011).

Generally, willfulness is a question of fact for the jury. See Singer, 324 F.3d at 821. Nevertheless, the Court finds that the plaintiffs have alleged no facts from which a reasonable jury could find that the defendant acted willfully with respect to the proper regular rate calculation. Merely failing to investigate

the law does not rise to the level of willfulness.  Richland Shoe Co., 486 U.S. at 133; Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 680 (1st Cir. 1998).  Therefore, the two-year statute of limitations will apply in this case.

Defendant maintains that no damages for the snow plow stipend existed before May, 2006, because that is when the stipend was instituted.  Because the plaintiffs do not refute that assertion, the Court finds that the plaintiffs are entitled to damages arising from the snow plow stipend only after May, 2006.

**IV. Motion for Leave to Amend the Complaint**

Plaintiffs move to amend their complaint for a second time to add a claim for failure to make timely overtime payments, in violation of the Massachusetts Payment of Wages Law (Mass. Gen. Laws ch. 149, § 148).  The defendant opposes that motion, arguing that adding an entirely new theory of liability and damages would "dramatically expand and prolong this action".  The defendant contends that the motion to amend was brought with a bad faith or dilatory motive.

**A.    Motion to Amend Standard**

Under Fed. R. Civ. P. 15(a), leave to amend before trial will be freely given "when justice so requires".  Despite that liberal amendment policy, the Court may deny a motion for leave to amend if, among other reasons, amendment would result in undue

delay or prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962).

   **B. Application**

The Court concludes that another amendment of the complaint at this stage of the litigation, more than three years after its inception, would result in undue delay. Liability has already been determined and the only issue left before the Court is damages. The plaintiffs provide no justifiable reason for the delay and none is readily apparent. Moreover, the proposed additional count is a state law claim that may, if plaintiffs choose, still be brought in state court.

                              **ORDER**

In accordance with the foregoing,

1) defendant's motion for summary judgment (Docket No. 37) is, with respect to the absence of willfulness and the denial of liquidated damages, **ALLOWED**, but is, with respect to the cumulative offset calculation, **DENIED**;

2) plaintiffs' motion to amend (Docket No. 43) is **DENIED**; and

3) the parties are directed to submit supplemental memoranda containing calculations of damages in accordance with this Order on or before March 22, 2011.

**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated March 14, 2011